

**SIGNED this 02 day of May, 2005.**

_____
**FRANK R. MONROE**
**UNITED STATES BANKRUPTCY JUDGE**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 01-12655-FM |
| | ) | (Chapter 7) |
| SHIRLEY A. SCHNAUTZ and | ) | |
| EUGENE F. SCHNAUTZ | ) | |
| | ) | |
| SHIRLEY A. SCHNAUTZ and | ) | |
| EUGENE F. SCHNAUTZ | ) | |
| Plaintiffs | ) | ADV. NO. 04-1039-FM |
| v. | ) | |
| FARM SERVICE AGENCY, | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| AGRICULTURE | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

The Court held a hearing on November 17, 2004 on Plaintiffs' Motion for Summary Judgment and Defendant's Motion for Summary Judgment. After the hearing, the Court took this matter under advisement. This is a core proceeding under 28 U.S.C. §157(b)(2)(K) as it is a

determination of the validity of a lien[1].  As such, it is a matter which arises both under title 11 and

in a case under title 11.  Accordingly, this Court has jurisdiction to enter a final order under 28

U.S.C. §1334(a), (b) and (d), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. §151 and the Standing Order

of Reference from the United States District Court for the Western District of Texas.

<u>Statement of Facts</u>

The parties filed Written Stipulations on July 19, 2004 in which they agree to the following

facts and stipulate to the authenticity and admissibility of the exhibits attached to the Written

Stipulations.  In 1973, Shirley Schnautz and Eugene Schnautz ("Plaintiffs") purchased 94.387 acres

of land.  Farm Service Agency and Rural Housing Service ("Defendants") claim various liens on

the 94.387 acres (the "Property")[2].  Farm Service Agency ("FSA") claims a purchase money lien

on the Property as is evidenced by a promissory note dated August 17, 1973 in the principal amount

of $30,500 and a deed of trust of evendate therewith filed for record on August 17, 1973 in the office

of the County Clerk of Hays County, Texas and recorded in Volume 157, Page 641, Deed of Trust

Records, Hays County, Texas (the "Purchase Money Loan").  Plaintiffs do not challenge the

validity, enforceability, or balance due on this Purchase Money Loan.  Plaintiffs entered into a

subsequent loan transaction with Rural Housing Service to build a house on the Property.  RHS

---

[1]The Schnautz' filed this adversary as a Complaint Seeking Avoidance of Lien.  The lien avoidance provisions of §522(f) do not cover the Schnautz' actions.  This proceeding should have been brought as one to determine the extent and validity of a lien. *See* Bankruptcy Rule 7001(2).  However, the Defendants did not object to this proceeding and the Court will review it as a lien validity issue.

[2]FSA and RHS are "successors in interest" to the Farmers Home Administration as a result of the reorganization of the U.S. Dept. of Agriculture under the Federal Crop Insurance Reform and Dept. of Agriculture Reorganization Act of 1994.  Farmers Home Administration was abolished under this Act.  A new agency, the Consolidated Farm Service Agency (subsequently shortened to Farm Service Agency) was created to assume the farm-related agricultural credit programs formerly administered by Farmers Home Administration.  Rural Housing and Community Development Service (subsequently shortened to Rural Housing Service) was created to assume the housing loan programs formerly administered by Farmers Home Administration.

2

loaned the Plaintiffs $21,150 to build a house on the Property. Plaintiffs do not challenge the validity, enforceability or balance due on the RHS note.

Plaintiffs then executed in favor of Farmers Home Administration-now FSA a note dated May 4, 1982 in the original principal amount of $70,840 and a deed of trust of evendate filed of record on May 4, 1982 in the office of the County Clerk of Hays County, Texas and recorded in Volume 287, Page 449, Deed of Trust Records, Hays County, Texas. Copies of the note and deed of trust are attached to the Written Stipulations. At the time of the filing of the petition, the unpaid balance of this loan was $103,605.89 with interest accruing at the rate of $10.6547 per day.

Prior to entering into this 1982 loan transaction, Plaintiffs submitted a farm and home plan to FSA which called for building a grist mill on the Property. A copy of this is also attached to the Written Stipulations. Plaintiffs' also submitted a Development Plan to FSA which itemized the costs of each component of the grist mill as well as provided estimated completion dates. In addition, the Development Plan indicated each construction contract to be entered into with each contractor (i.e. foundation, building) as well as a list of each item to be purchased. A copy of this plan is attached to the Written Stipulations. The Development Plan calls for the construction of a grist mill on the Property for a total of $68,500. It consists of erection of a metal building, foundation, electric work, equipment, a septic tank and a grain bed.

On or about May 4, 1982, Plaintiffs attended a closing at which time they both executed a HUD-1 Settlement Statement. On the same day, Plaintiffs executed the note and deed of trust evidencing the $70,840.00 loan. Subsequent to the execution of this note and deed of trust, FSA disbursed the funds necessary for the construction of the grist mill. A Disbursements Journal also attached to the Written Stipulations reflects the disbursements made for the construction of the grist mill on the Property. The Disbursements Journal reflects that disbursements were made after

execution of the note and deed of trust.  All were used for the construction of the grist mill.  All of the disbursements requested by the Plaintiffs for the transaction were actually made.

Plaintiffs make two contentions.  First, Plaintiffs contend that under the Texas Constitution Article 16, §50 and related statutes liens for improvements of the homestead can only be contracted by actual mechanics and materialmen and that because this mortgage lien secures payment of money loaned and not for the actual work and material used, it is invalid.  Plaintiffs seem to suggest that this loan could be viewed as a home equity loan which at the time it was made would have been invalid.  Defendant, on the other hand, argues that Texas law supports the validity of the lien as a contractual lien for improvements as the transaction meets all the requirements of the Texas Constitution and any statutes in effect in 1982 relating to such improvements liens.  Plaintiffs also contend that if the lien is not unconstitutional, the deed of trust along with the Development Plan are insufficient documents to create a valid lien on the Property.

## Legal Issue

1.  Do the deed of trust and the Development Plan read together constitute a valid mechanic's lien contract?

2.  Can a lien upon the homestead be contracted to secure money advanced for the purpose of enabling the owner of the homestead to pay for labor and materials to be used in the erection of improvements upon such homestead?

3.  Are the Plaintiffs' claims barred by the statute of limitations?

## Legal Analysis

Under the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, a party will prevail on a motion for summary judgment when, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." *Celotex Corp. v. Catratt,* 477 U.S. 317, 322, 106

S.Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986); Fed. R. Civ. P. 56(c). The parties have stipulated to all

of the relevant facts. This Court must now apply the law to the facts to determine the

validity/invalidity of the lien in question.

<u>Introduction</u>

In 1982 the relevant Constitutional provisions in effect were as follows:

> The homestead of a family . . .shall be, and is hereby protected from the forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead. . . No mortgage, trust deed or other lien on the homestead shall ever be valid, except for the purchase money therefore, or improvements thereon, as hereinbefore provided. . .

Tex. Const. Art. 16 §50 (Vernon 1993).

> Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefore; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.

Tex. Const. Art. 16 §37 (Vernon 1993).

Tex. Ann Civ. St. art. 5460 which was in effect at the time provides:

> "When material is furnished, labor performed, or improvements as defined in this title are made, or when erections or repairs are made upon homesteads, if the owner thereof is a married man, then to fix and secure the lien upon the same it shall be necessary for the person or persons who furnish the material or perform the labor, before such material is furnished or such labor is performed, to make and enter into a contract in writing, setting forth the terms thereof, which shall be signed by the owner and his wife. And such contract shall be recorded in the office of the county clerk in the county where such homestead is situated, in a well bound book to be kept for that purpose. When such contract has been made and entered into by the husband and wife and the contractor or builder, and the same has been recorded, as heretofore provided, then the same shall inure to the benefit of any and all persons who shall furnish material or labor thereon for such contractor or builder."

5

Tex. Ann. Rev. Civ. St. art 5460 (General & Special Laws of the State of Texas, 61st Leg. 1969)(repealed 1983)(This statute was recodified as Tex. Prop. Code §53.059, repealed by Acts 1997, 75th Leg., ch 526 §24 eff. Sept. 1, 1997 now Tex. Prop. Code §53.254)(Vernon Supp. 2004)

Article 3839 reads as follows:

> The exemption of the homestead provided for in this title shall not apply where the debt is due:
>
> 1. For the purchase money of such homestead or a part of such purchase money.
>
> 2. For taxes due thereon.
>
> 3. For work and material used in constructing improvements thereon; but in this last case such work and material must have been contracted for in writing, and the consent of the wife, if there be one, must have been given in the same manner as is by law required in making a sale and conveyance of the homestead.

Tex. Ann. Rev. Civ. Stat. art. 3839 (Acts 1983, 68th Leg., ch. 576, repealing this article, enacts Texas Property Code.)

> Tex. Prop. Code Ann. §53.059 (Vernon 1984) states:
>
> (a) To fix the lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement.
>
> (b) The contract must be entered before the material is furnished or the labor is performed.
>
> (c) If the owner is married, the contract must be signed by both spouses.
>
> (d) The contract must be filed with the county clerk of the county in which the homestead is located....
>
> (e) If the contract is made and recorded by an original contractor, the contract inures to the benefit of all persons who labor or furnish material for the original contractor.[3]

Tex. Prop. Code Ann. §53.059 (repealed by Acts 1997, 75th Leg., ch 526 §24 eff. Sept. 1, 1997 now

---

[3]The Court notes that although the legislature enacted this section after the transaction in question, it is materially the same as the 1982 statute. *See* Vernon's Tex. Ann. Civ. St., art. 5460.

Tex. Prop. Code §53.254)(Vernon 1995 and Supp. 2004).

1.    Deed of Trust and Development Plan/Validity of Lien

If this were merely an issue of whether a Development Plan which was expressly incorporated into a deed of trust created a valid contract for a mechanic's lien on the Plaintiffs' homestead, this opinion could be very short as the Court believes the parties have met the constitutional and statutory requirements to create such a valid lien.

In order for a lien to be valid upon a homestead for providing improvements thereon, the work and material used in constructing improvements must be contracted for 1) in writing, 2) before the material and labor are furnished, and 3) with the consent of both spouses. Tex. Const. art. 16 §50, Tex. Rev. Ann. Civ. St. art. 5460 *supra*. This contract must be in writing as is required by the Constitution, and by its express terms should stipulate that work is to be done in improving the homestead, and the cost thereof, or if only material is to be used in its improvement, the purchase of such material and its character. *Walker v. Woody*, 89 S.W. 789, 790 (Tex. Civ. App. 1905) *writ ref'd*. Thus, a valid lien cannot be created upon a homestead to secure money borrowed for the purpose of paying for improvements on the property, even if it was used for that purpose, <u>if there is no written contract providing the terms of the furnishing of the material or labor</u>. *Girardeau v. Perkins,* 126 S.W. 633, 636 (Tex. Civ. App. 1910) *writ ref'd*.

Plaintiffs argue that no separate written contract existed which stipulated the material that was to be provided or the terms of the labor at the time the parties entered into the loan agreement for the building of the grist mill. Plaintiffs contend that FSA failed to comply with the Constitution and the statute since no written contract was entered into in the first place and because the deed of trust together with the Development Plan do not create such contract.

It is true that the parties did not enter into a separate written contract for construction of the

grist mill. But, in addition to the deed of trust, there was a Development Plan signed by both parties. And, to create and fix a lien upon the homestead for work or material used in its improvements, it is not necessary that the contract required by the Constitution be separate and distinct from the mortgage or deed of trust. *Walker,* 89 S.W. 789, 790. If the mortgage or deed of trust, in addition to the usual provisions of such instrument, contains the essential ingredients of the contract contemplated by the Constitution, and is executed by the formalities required in the sale and conveyance of the homestead, such instrument constitutes a valid lien. *Id.* Therefore, it is not necessary to have a separate written contract stipulating the terms of material or labor that are to be furnished as long as the mortgage or deed of trust contains the essential terms of the contract required by law.

Almost the exact documents at issue here were at issue in *In re Burnett,* 120 B.R. 839 (Bankr. N.D. Texas 1990). The Burnetts and Farmers Home Administration had agreed to a Development Plan which provided for the construction of a grain storage barn on the Burnetts' homestead. Subsequently, the parties executed a deed of trust to secure the loan for the construction of this grain storage barn. Thereafter, the materials were provided and the barn constructed. In bankruptcy, the Burnetts claimed that the Development Plan and the deed of trust could not create a valid mechanic's lien on their homestead. To the contrary, the *Burnett* court held that the Development Plan and deed of trust did create a valid contract for a lien under Texas law as the deed of trust contained the necessary terms such as the date of instrument, principal amount of the loan, annual interest rate and description of property on which the improvements are situated. *Id.* At 842. The deed of trust expressly stated that the parties agreed to a constitutional and contractual lien. The court found this established a contract for improvements to the homestead; and since the materials and specifications were properly set forth in the Development Plan and incorporated into the deed of trust, the deed of

trust contained the "essential ingredients" required and the Farmers Home Administration had a valid lien. *Id.*

The 1982 loan and deed of trust at issue here meet all of the requirements of a valid mechanic's lien based on the stipulated facts. The deed of trust provides at page 5 that the $70,840 improvements loan is to be used to erect, construct, complete and repair or make other improvements on the Property. Exhibit B to the Written Stipulations. The loan funds at issue were advanced after the note and deed of trust were executed, which is a contract in writing, and the funds were used to construct an improvement on the Plaintiffs' homestead.

The deed of trust in the instant case states that the Plaintiffs received a loan which they are obligated to repay, and to secure the sum, the Plaintiffs executed a deed of trust which "creates a valid constitutional and contractual lien on said property." The language creating the lien is identical to the language in *Burnett* as it appears to be the same government form. The deed of trust further provides that FSA will "furnish $70,840.00 to erect, construct and repair buildings or improvements upon, and will furnish all labor and material necessary for the improvements upon the property described in the Development Plan." The deed of trust clearly states that both Plaintiffs and FSA agreed to a contractual lien and this established a contract for improvements to the homestead and incorporated the terms of the Development Plan. The Development Plan lists each item that is to be built or used in the construction of the grist mill, the cost for the materials, estimated date of completion and date of final inspection. Therefore, the materials and specifications were properly incorporated into the deed of trust. The deed of trust, together with the Development Plan, contains the essential ingredients creating a valid written contractual lien. The Plaintiffs executed the deed of trust and all parties executed the Development Plan and these were executed before any material or labor was provided. The parties therefore complied with all of the requirements in effect under

the Constitution and statutes in effect in 1982, and the deed of trust and Development Plan are sufficient to create a lien.

## 2.   When Money Is Loaned/Validity of Lien

Plaintiffs take their argument one step further, however, by arguing that in 1982, the language in the Constitution and statutes providing for a lien for improvements made on the homestead were designed to only protect the actual contractors and builders and not lending institutions who merely advanced money for construction; and, therefore, strictly interpreted, the lien must be for actual labor performed or material furnished and not for money loaned to pay for labor and materials used. Plaintiffs urge that FSA's lien must fail because FSA merely advanced money and did not perform the actual labor or furnish the actual materials to construct the grist mill.   Although antiquated, Plaintiffs cite cases that do suggest that only mechanic's and materialmen's liens can encumber a homestead, and that a lien to secure payment of money loaned, and not for work and material used, cannot create such a lien. *Gaylord v. Loughridge,* 50 Tex. 573 (1879), *Ellerman v. Wurz,* 14 S.W. 333 (1890) *First National Bank v. Campbell,* 58 S.W. 628 (1900) *writ ref'd.*

In *Gaylord,* the homestead was community property. The homeowner was unable to finish building his house without more lumber and could not get the lumber without money. He applied to Loughridge who advanced money upon the express understanding that it should be used to obtain lumber to finish the house. The money was used for this purpose. Gaylord then repaid part of the money and executed for the balance ($300) a note, with this clause added to it: "[b]eing money advanced me for construction of my dwelling-house, in purchase of materials and payment of labor on same, and which constitutes a lien on same until paid." This instrument with a description of the property upon which the lien was claimed was filed of record, and a lien sought to be enforced by the mechanic's lien statute in force at the time. Gaylord's wife did not sign the document creating the

lien.

At that time, article 2, §47 of the Constitution of 1869 provided that "mechanics and artisans of every class shall have a lien upon the articles manufactured or repaired by them for the value of their labor done thereon or materials furnished therefor; and the Legislature shall provide by law for speedy and efficient enforcement of said liens." The statute in effect stated "Any person or firm, artisan or mechanic, who may labor, furnish material, machinery, fixtures and tools to erect any house improvement, or to repair any building or article, or any improvement whatever, shall have a lien on such article, house, building, fixtures or improvements, and shall also have a lien on the lot or lots, or land necessarily connected therewith to secure payment for labor done, material and fixtures furnished for construction or repairs." (Paschal's Dif., art 7112).

The Supreme Court of Texas in *Gaylord* found that the intention of the Legislature was to include some character of material which entered into the structure of the building and formed a component part of it and not a loan of money with which to purchase the same. The Supreme Court determined the lien invalid.

The Supreme Court of Texas also analyzed this transaction under an express lien theory given by the terms of the contract. The court noted that the Constitution prohibited voluntary alienation or incumbrance of the homestead by the husband alone. The court therefore determined that the instrument did not create an express lien, because the husband alone, without the consent of the wife had no power to incumber the homestead. In saying so the court suggested that if the wife had signed the document, the constitutional requirements for an improvements lien, as opposed to an actual mechanic's lien would have been satisfied.

In *Ellerman* the husband and wife executed a deed of trust to a building and loan association to secure the payment of a note in consideration of money loaned to them by the association. The

11

deed of trust recited that it was for the purpose of building a homestead on the lot and the property was indeed the homestead. Eleven years after *Gaylord,* the Supreme Court held that since the lien was not for work and materials used in constructing improvements thereon, the lien on the property was void. The *Ellerman* court determined that under the Constitution art.16, §50, no lien could be created except for the purchase money, "or work and material used in constructing improvements thereon; and in this last case only when the work and material are contracted for in writing, with the consent of the wife, given in the same manner as is required in making sale and conveyance of the homestead." The court stated this constitutional requirement for "work and material contracted for" related only to mechanic's and material liens and cites *Gaylord* for the proposition that the lien must be for labor performed or material furnished and not for money loaned. The *Ellerman* court states:

> This construction is obviously correct. The language of the constitution is 'for work and material used,'etc. If the lien could be contracted to secure the payment of money loaned, the purpose of the statute and constitution could be defeated, and the wife and children deprived of their homestead, by the husband securing the co-operation of the wife through the pretense that the money would be used to pay for the labor and material used in making the improvement. Conceding that the deed of trust was executed by Wurz and his wife in the manner required, it was evidently given to secure the payment of money loaned, and not for work and material used, and could not, therefore, have created a lien on the homestead.

*Ellerman* at 333-334. The *Ellerman* Court makes no mention of the express lien as discussed in *Gaylord.*

In *Campbell,* the San Antonio Court of Appeals held, citing no prior case law whatsoever, that no mechanic's lien could be created in favor of one who merely furnishes money to pay for labor and materials but does not actually perform the labor or furnish the materials. Here, however, the husband and wife entered into a contract signed and duly acknowledged by the parties whereby the lender agreed to furnish material and labor for the construction and erection of a dwelling house upon the homestead which contract was then duly recorded in the records of mechanic's and builders' liens in the county. The lender did not make any of the improvements nor furnish any of the labor. The

money was all used to pay the contractor for the labor and material performed and used by him in constructing the house. The *Campbell* court appears to take issue with the fact that the contract was drawn in the form of a builder's contract as a device to evade the constitutional exemption of a homestead and also never discusses whether an express contractual lien could be created pursuant to a mortgage.

Other cases with holdings around the same timeframe suggest that spouses do have the ability to borrow money for improvements and pay for the labor and materials themselves. These cases basically seem to acknowledge that an express contract or lien, which excludes the idea of a mere loan, and is executed with the formalities required by the Constitution, with the real purpose and effect of thereby securing the necessary labor and materials actually used in constructing improvements upon the homestead should be upheld. *Lippencott v. York,* 86 Tex. 276, 24 S.W. 275 (1893); *Loan Co. v. Paschall,* 12 Tex. Civ. App. 613, 34 S.W. 1001 (Tex. Civ. App. 1896) *no writ*; *Pioneer Savings & Loan Co. v. Everheart,* 18 Tex. Civ. App. 192, 44 S.W. 885 (1898) *no writ*; *Downard v. National Loan Co.,* 22 Tex. Civ. App. 570, 55 S.W. 981 (Tex. Civ. App. 1900) *writ ref'd*; *Wilson v. Hinton,* 116 S.W. 2d 365 (Tex. 1938). Most of these cases suggest that Const. art. 16, §50 should be read independently of the mechanic's lien article and statutes and that in doing so allows spouses to create valid improvements liens on their property whether it be with the actual contractor or a lender so long as they comply with the constitutional requirement of executing the contract and such contract is signed before labor and materials are furnished. That the money loaned was actually used for the actual materials and labor is also a significant factor in these cases.

*Lippencott* involved certified questions to the Texas Supreme Court regarding the power of husband and wife to impose a charge upon their homestead, the nature and effect of the mechanic's lien, and the difference between the mechanic's lien and one created solely on contract. The husband

13

and wife entered into a mechanic's lien with a contractor which was then duly filed upon the homestead, and the contractor while the mechanic's lien was in force, assigned the debt, together with the lien, to the actual lender. The husband and wife then executed new notes and a deed of trust upon the homestead to the lender, extending the debt and lien five years and the lender paid the contractor for the improvements. The deed of trust expressed the original lien and was properly executed by both husband and wife. Assignment of the debt and execution of the new obligation to secure it were pursuant to an understanding existing when the contract to make improvements was made; and, it was the intent of all parties that the lender under the new contract have the same security for the sum due for improvements as had the contractor who actually made them, so far as express contract could give it.

The *Lippencott* court recognized that while Const. art. 16, §50 operates as a restriction on the power of spouses to impose charges upon the homestead, it also recognizes their power to do this by mortgage, trust deed, or other lien to secure payment for work or labor used in constructing improvements upon it; and, in the absence of legislation declaring the only mode in which this may be done, no good reason is perceived why it may not be mortgaged to secure a debt contracted, as a debt must be, to bind the homestead, for labor or material used in improving it. The court also references art 16, §37 and distinguishes the liens created thereunder from liens under art. 16 §50. The court states: "Mechanic's and like liens have no standing under the common or unwritten law, but are the creatures of statutory law . . . Such liens differ materially, in nature and effect, from liens which are purely the result of contract, such as mortgages or trust deeds." *Id.* at 280. Here, there was no law in force prohibiting such a contract. Husband and wife created a lien that if the transaction was really one whereby it was intended only to secure payment of the value of labor and material actually expended in making the improvements as opposed to a subterfuge to cover up a transaction

14

really a loan of money on mortgage of the homestead, it is not forbidden by law.   Holding that the deed of trust lien was valid,   the court noted that "[c]onsiderations which induce and justify legislation giving a lien to secure value of labor and material expended in improvements on real property are the same, so far as the improvements are concerned, as those which secure to the vendor a lien on land sold to secure the unpaid purchase money; and the constitution, on same considerations, as between the parties to contract under which improvements are made, places these two classes of creditors on the same footing as to the right to lien on the land itself, and it recognizes the power and right of the owner in the one instance, as in the other, to fix such by contract".  *Id.* at 283.  *See also, Gaylord, supra* where the Supreme Court had previously suggested the ability to create a contractual improvements lien by merely complying with art. 16, §50.

In *Paschall*, National Building and Loan & Protective Union ("Union") and Paschall entered into a contract to secure a lien on the homestead in exchange for a loan to be used to build a house on their property.   Thereafter, Union entered into a contract with a constructor to build Paschall's house and the constructor was paid under the contract once the house was built.   Union then assigned Paschall's note to Pioneer Savings & Loan Co. ("Pioneer") who filed an action to foreclose the mortgage lien on the homestead, which was secured by the money given to provide labor and materials in improving the homestead.   Citing *Lippencott*, the court determined that there was a valid contract entered into by the Paschalls and Union whereby Union agreed to erect the improvements upon the homestead and that the amount of money expended in the construction of such building and in the material procured therefor was a valid contractual lien and should be enforced.   *Paschall* at 616.

Likewise, in *Downard,* the appellants desired to erect a dwelling but were without means to do so.  They applied to one of National Loan & Investment Co.'s agents for a loan and as a means

of procuring said loan and securing the lender in the repayment of same, it was agreed between them

and the agent that they should enter into a written contract with the agent for erection of said house

with the understanding that they should execute to the agent their note to be secured by mechanic's

and builder's lien and that when the contract was duly executed it would be assigned to the lender

who would advance the funds for the house. The appellants did execute the note to the agent and the

construction contract was executed with all the formalities requisite to fixing a mechanic's and

builder's lien thereon. The agent assigned the note to the lender and the lender funded the money to

the agent who gave the money to Downnard. The contract was made in good faith by all parties for

the purpose of securing the lender for the money they proposed to borrow from it, and the money

turned over to Downard was all expended to erect the dwelling. The agent did not in person erect

nor superintend the construction of the house nor was it understood he should do so. He did,

however, oversee that the house was constructed, kept watch over the construction and knew what

bills were being paid. The money was given directly to Downard as Downard believed he could get

labor cheaper and would have better control of the workmen. The house was in fact erected by day

laborers under the supervision of a contractor who was employed by Downard. The house had been

partially erected before the actual receipt by Downard of the money, but the arrangement therefore

was made before the employment of any labor or the purchase of any material; and the agent

informed a firm of lumber dealers, who had inquired about the loan, that Downard would have his

money, and that such firm could go ahead and furnish him lumber.

The *Downard* court did not believe that the constitution inhibited this transaction. On the

contrary, the court stated that "the exception in section 50, art. 16, of that instrument, confers upon

the husband and wife power to incumber their homestead in the manner there indicated "for work and

material used in constructing improvements thereon". *Id*. at 572. The mere fact that the agent would

16

do no part of the work was not conclusive against the lien. The agent was under a legal obligation to see that the house was built, he testified that was his intent and he kept watch over its erection and knew what bills were being paid. The effect of the transaction was, as intended, that the appellee company furnished the labor and material to the extent of $1,500, the wife having full notice of the purpose and extent of the lien. Again citing *Lippincott,* but also *Paschall* and *Everheart, supra,* the *Downard* court upheld the validity of the lien.

In *Everheart* there was a written contract signed by both spouses with the loan company to erect the improvements and the defendants agreed to pay the sum of $2,300. The contract recited that defendants had executed the note for this sum and a lien was given upon the lot and house to be erected thereon to secure payment. The defendants' objective was to obtain from the loan company money with which to pay for labor and material necessary to the erection of a dwelling house upon their homestead lot. It was the purpose of the loan company to furnish the money necessary to this objective, and it was fully understood by all parties that a lien should be and was given upon the property as security to the loan company. About $2,100 was paid to defendant, J.H. Everheart, or upon his order, in good faith, upon the contract and the greater portion of it, if not all, was paid by him for labor and material used to erect a dwelling upon the homestead lot. The *Everheart* court determined that "[u]pon this state of facts the court should have charged the jury that a lien existed upon the property in favor of the plaintiff to the extent of the money furnished by the plaintiff, and which was by defendants used in payment for the labor and material which were put into the improvements." *Id.* at 888.

The Court in *Everheart* comments:

It is to the interest of the owner to get the best material at the least price, and the most skilled labor upon the best terms, and it may be highly to his benefit to act for himself in these matters. It may be that laborers and materialmen are unwilling to extend him credit, and that he cannot get the improvements made without paying cash for labor and material. Must he,

then, be deprived of the privilege of making such improvements, because the law will not permit him to give a lien upon the homestead to secure money loaned to him to be used for these objects? It may be said that he could contract liens in favor of the laborers and material men, and have them assign such liens to the persons furnishing the money, to secure its repayment to him. This would unquestionably be legal, and the assignee could enforce such liens upon the homestead. Why should the law give sanction to this indirect method, and condemn a direct contract lien in favor of the person furnishing the money to pay for the labor and material? In each case the object is to obtain improvements upon the homestead, and this must be accomplished by giving a lien upon the property. There is no particular form in which the lien is required by the constitution and the laws of the state to be given. It is the object to be accomplished to which the law is directed, and we think it would be contrary to the spirit of the constitution, and wholly unnecessary to the effectiveness of its wise and benign provisions, protecting the homestead from forced sale and voluntary incumbrances, to hold that a lien could not be directly created upon the homestead for the purpose of securing money advanced to the owner to be used to pay for labor and material to go into improvements thereon. When money is obtained for that purpose, and applied to the securement of the object, we can see no principle or reason which would invalidate the lien given to secure the money.

*Everheart* at 888.

*Wilson v. Hinton,* a more recent Supreme Court case although decided in 1938 strongly suggests that the former Supreme Court holdings of *Gaylord* and *Ellerman* are no longer good law. 131 Tex. 593 (1938). Further, *Gaylord* itself even suggests the possibility of two ways to create improvements liens.

In *Wilson* the homeowners purchased a tract of land with an old house upon it which they intended to improve as a residence. The loan company furnished the purchase money and reserved a vendor's lien on the land to secure payment of the note. The lender also supplied the money for making improvements and repairs on the house. The homeowners executed two contractor's and mechanic's liens upon the tract of land and another tract already owned. In each of the contracts, a certain individual was named contractor. All liens and notes were subsequently assigned to the lien holder (Wilson). When Wilson sought to foreclose upon default, the homeowners claimed that the mechanic's liens failed to create a valid lien upon the homestead because the contractor listed in the contract did not perform the work. In reality, the homeowner was entrusted with contracting for labor

18

and materials and supervising the construction of the improvements on the house and the lender paid for the materials and labor as it came due and payable.

The evidence in this case negated the idea of a loan to the homeowner, with privilege on his part to proceed indiscriminately in the purchase of material and the furnishing of labor. On the contrary, the lender was in fact the real contractor and the homeowner merely acted as agent for the company in making the improvements. Citing *Downard, supra,* the Supreme Court verified that the established law of this state is that the lien contemplated by Const. art. 16 §50; and Vernon's Ann. Civ. St. art. 5460, may be created in favor of one who actually furnishes labor and material, under a written contract, which is used in the construction of an improvement, even though the same may be furnished through the agency of someone else. The Supreme Court also noted that a contract or lien, which excludes the idea of a mere loan, and is executed in accordance with the formalities required by the Constitution, with the real purpose and effect of providing the necessary labor and material actually used in constructing improvements upon the homestead should be upheld. *Id.* at 598.

This is exactly our case. We have a deed of trust and Development Plan incorporated therein which were executed by both spouses and the real purpose and effect of the transaction was to secure the necessary labor and material to build the grist mill, the grist mill was actually built and the deed of trust and Development Plan executed prior to the money being lent. It makes no sense to this Court that if an owner may create the lien to secure payment for labor and material to go into improvements upon the homestead, that he should not then also be able to give a lien upon the homestead to secure money advanced to him by another to pay for such actual labor and material to be put into such improvements. Defendant's lien is valid.

19

3. Statute of Limitations

Under *28 U.S.C. §2410* the United States waives sovereign immunity in any civil action to quiet title to real property where the United States has or claims a mortgage or lien. The statute of limitation for actions challenging the liens held by government agencies is six (6) years. *28 U.S.C. §2401(a).* Defendants argue that the statute runs from the date in which the deed of trust was recorded which was in 1982. Plaintiff urges that this is merely the accrual date of the indebtedness and not the accrual date for the right of action under §2401(a).

The United States Code, Title 28, §2401(a) states that "[e]xcept as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

Plaintiffs cite to a Fifth Circuit case claiming that the accrual date is the date on which the claimant was on reasonable inquiry notice about the forfeiture, i.e. the earlier of the following: when he has become aware that the government declared the property forfeited, or when an inquiry that he could reasonably have been expected to make would have made him aware of the forfeiture. *United States v. Wright,* 361 F3d. 288(5th Cir. 2004). Plaintiffs argue that their complaint is not barred by the six year statute of limitations because Plaintiffs received the Defendants' notice of intention to foreclose their homestead property on September 6, 2001 and Plaintiffs' Complaint was filed on February 24, 2004 well within the six year period. Plaintiffs claim reasonable inquiries would not have led them to uncover that these lien claims were not properly perfected and would not have put them on notice of the invalidity of the lien.

Defendants claim the cause of action to challenge such invalidity accrued in 1982 when the lien was created and the statute has run. Defendants cite to *Cyrus Ware et. al. v. United States of America,* Cause No. SA-99-CA-0548-OG, U.S. District Court, Western District of Texas, San

20

Antonio Division, where the borrowers asserted a claim that a United States foreclosure sale was invalid, claiming the deed of trust lien foreclosed was an invalid lien on the homestead. The Magistrate Judge granted summary judgment in favor of the United States, based upon the twelve year statute of limitations under §2409(a). This section provides a twelve (12) year statute of limitations where the United States actually holds title instead of a lien. The Magistrate used this section because the United States had already foreclosed. The U.S. District Court determined that "the cause of action accrues on the date the plaintiff or his predecessor knew or should have known of the claim of the United States.". Opinion pg. 8. The summary judgment evidence provided that the Wares were aware of the United States security interest in 1975 when they executed the . . .note restructuring previous notes . . .This note was secured by liens and deed of trust on two tracts and the Wares acknowledged this debt and security interest in their first bankruptcy filing. However, the Court notes that the United States initiated foreclosure proceedings on Tract 2 on May 1, 1979, November 6, 1979, April 1, 1980, March 3, 1981 March 2, 1982, November 5, 1996 and May 5, 1998. It was because the initial attempt at foreclosure was in 1979 that the Court held the Wares knew or should have known that the United States claimed some interest adverse to their alleged homestead interest, and it was this awareness of foreclosure that was sufficient to trigger the 12-year statute of limitations. They filed their suit some 20 years later in 1999.

The *Ware* Court further cited to *Bank One Texas N.A. v. United States,* 157 F.3d 397, 402 (5th Cir. 1988) which held that the cause of action accrued when the plaintiff knew or should have known of the claim of the United States. The *Ware* Court stated that other courts have established the standard for accrual of a cause of action as to when the borrower simply has knowledge of the "contours" of an adverse claim by the United States. *See, Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980). Defendants claim regardless of the precise test, Plaintiffs here knew they were

granting a lien against their homestead for improvements in 1982 when they signed the deed of trust

The Magistrate Judge's recommendation was accepted by United States District Judge Garcia. The District Court opinion in *Ware* was affirmed *per curiam* by the Fifth Circuit Court of Appeals. 252 F.3d 435 (5th Cir).

Plaintiffs cite to *Wright* for the proposition that actual notice of a relinquished right must be received before the statute of limitations begins to accrue. *Wright* is a case where a convicted drug defendant challenged forfeiture of cash seized at the time of his arrest. The money was seized when Wright was arrested in February 1995 and was declared forfeited on August 9, 1995. In 1997 Wright attempted to obtain information about the forfeiture but was unsuccessful. Not until April 2002 did Wright file his motion challenging the forfeiture on the grounds that he received insufficient notice. He then argued that the limitations could not begin to run until he became aware of the forfeiture or would have become aware of the forfeiture through the exercise of due diligence, which he contended occurred in 1997.

Although Defendants cite *Ware* for the proposition that Plaintiffs are aware of an adverse interest of Defendant at the time they executed the note and deed of trust, this is simply not the case. Controlling precedent states that it is the Wares' knowledge of the foreclosure proceedings that made them aware of an <u>adverse</u> interest of the United States. This is the better result because when Plaintiffs' signed the note and deed of trust with the Defendant, they may have known of the United States' interest in the Property, but they did not know of any adverse interest at that time. It was only upon notice of the foreclosure that the interest becomes adverse. This is also in line with the recent *Wright* case which determined the time ran from the notice of forfeiture.

Plaintiffs' received Defendants' notice of foreclosure in 2001 and filed for bankruptcy in 2004 well within the six year period. The statute of limitations has not run.

22

Conclusion

The deed of trust with the Development Plan as incorporated therein, both being duly signed by the Plaintiffs, create a valid lien.  And, although there is case law to the contrary, the more well-reasoned cases provide that financing institutions that do not perform labor or provide material, but merely lend the money to make improvements on the homestead, can create a valid lien on such property as long as there is a valid constitutional lien in place before any materials or labor are provided, and the actual objectives of the parties are met.  Those requirements are met here. Plaintiffs executed a written contract creating the lien before any materials or labor were provided, and the grist mill was actually built on the homestead property pursuant to the parties' objectives. The lien is valid.

Plaintiffs were not aware of Defendants' adverse interest  until they received the Notice of Foreclosure in 2001.  They filed bankruptcy in 2004, well within the limitations period under §2401(a).  Therefore, appropriate Orders reflecting this ruling will be entered accordingly.

# # #